FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 18, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRACI B., | NO: 1:19-CV-3037-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 11 and 12. This matter was submitted for consideration

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

without oral argument. The Plaintiff is represented by Attorney D. James Tree. The Defendant is represented by Special Assistant United States Attorney Christopher J. Brackett. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 12, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 11.

## JURISDICTION

Plaintiff Traci B.[2] filed for supplemental security income and disability insurance benefits on November 1, 2012, alleging an onset date of October 1, 2009. Tr. 357-70. Benefits were denied initially, Tr. 211-24, and upon reconsideration, Tr. 227-31. A hearing before an administrative law judge ("ALJ") was conducted on September 15, 2014. Tr. 41-88. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits on January 16, 2015. Tr. 186-204. Plaintiff requested review of this decision, and on June 29, 2016, the Appeals Council vacated the hearing decision and remanded for further proceedings. Tr. 207-09. A second hearing was conducted on June 5, 2017. Tr. 89-127. At the second hearing, Plaintiff amended her alleged onset date to January

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

1, 2012.  Tr. 15, 99.  Plaintiff was again represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 12-37, and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 50 years old at the time of the first hearing.  Tr. 47.  She graduated from high school, took some accounting and business correspondence classes at community college, and received an information technology certificate while she was incarcerated.  Tr. 57-59, 114-15.  She lives with her ex-husband, and rents an extra room in his house.  Tr. 48, 100.  Plaintiff has work history as a bookkeeper, administrative clerk, traffic manager, home attendant, locker room attendant, and janitor.  Tr. 74, 115-16.  She testified that she cannot work because of anxiety, chronic pain all over her body, numbness in her arms, difficulty sitting for long periods of time, and difficulty being around people.  Tr. 106-08.

Plaintiff testified that she has anxiety, depression, shoulder pain and numbness, back pain, and points on her body that are painful all the time, Tr. 63, 71-72, 109.  She can only sit for a short period of time before her legs go numb,

and she has numbness in her arms.  Tr. 108.  Plaintiff testified that she would have

to call in sick two or three days a week because of her pain.  Tr. 112.

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  If the evidence in the record "is

susceptible to more than one rational interpretation, [the court] must uphold the

ALJ's findings if they are supported by inferences reasonably drawn from the

record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar and cervical spine degenerative disc disease; right foot disorders (cavovarus foot, ankle equinus, accessory navicular, posterior tibial tendinitis, and navicular exostosis); carpal tunnel syndrome; fibromyalgia syndrome; obesity; affective disorders (variously characterized as bipolar disorder and major depressive disorder); and anxiety-related disorder (variously characterized as anxiety, generalized anxiety disorder, panic disorder, and agoraphobia); and PTSD. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally reach overhead (i.e., above shoulder level); frequently reach below shoulder, handle, and finger; occasionally balance, stoop, kneel, and crouch; never climb or crawl; must avoid concentrated exposure to vibration and hazards. She can perform simple, routine tasks and follow short, simple instructions. She can do work that needs little or no judgment, and can perform simple duties that can be learned on the job in a short period. She requires a work

environment with minimal supervisor contact (minimal contact does not preclude all contact, rather it means contact does not occur regularly, and also does not preclude simple and superficial exchanges or being in proximity to the supervisor). She can work in proximity to co-workers, but not in a cooperative or team effort. She requires a work environment that has no more than superficial interactions with co-workers; requires a work environment that is predictable and with few work setting changes; and requires a work environment without public contact.

Tr. 20-21. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 28. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: small products assembler, inspector and hand packager, and parts cleaner. Tr. 29. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2012, through the date of this decision. Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 11. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

2. Whether the ALJ properly considered the medical opinion evidence; and

3. Whether the ALJ erred at step five.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 21.

### 1. Lack of Objective Medical Evidence

First, the ALJ found the objective medical evidence was inconsistent with Plaintiff's claims of disabling conditions. Tr. 21-25. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Plaintiff failed to identify or challenge this reason in her opening brief; thus, the Court may decline to address this issue. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). However, even had Plaintiff not

waived the issue, the Court finds this reason was supported by substantial

evidence.  First, as to her physical impairments, while he acknowledged that

Plaintiff had a "history of multiple injuries" and diagnoses, the ALJ specifically

found that "imaging reports showed mostly mild abnormalities, inconsistent with

disabling injuries or conditions."  These included a November 2012 lumbar spine

MRI showing mild multi-level spondylosis including facet arthrosis; a November

2012 cervical MRI showing only mild spondylosis; normal EMG and nerve

conduction studies in 2012; and 2016 x-rays of cervical and lumbar spine showing

only mild degenerative changes, normal gait, and intact neurological examinations.

Tr. 22-24 (citing Tr. 601-02, 612, 615-16, 646-47, 648-49).  Similarly, the ALJ

found that despite her claims of disabling mental health limitations during the

relevant adjudicatory period, "she had mostly normal mental status evaluations,

even early in the period in question."  Tr. 25, 571, 581-84, 587-90, 633-34, 657-58,

667, 675-76, 681, 860, 1123, 1127, 1130, 1134-35, 1138, 1143, 1146, 1150, 1154,

1160, 1164, 1172, 1179, 1236, 1249, 1258, 1263, 1269.

Thus, regardless of evidence that could be considered favorable to Plaintiff,

it was reasonable for the ALJ to find the severity of Plaintiff's mental and physical

symptom claims was inconsistent with normal objective findings across the

longitudinal record.  Tr. 21-25.  "[W]here evidence is susceptible to more than one

rational interpretation, it is the [Commissioner's] conclusion that must be upheld."

*Burch*, 400 F.3d at 679.  The lack of corroboration of Plaintiff's claimed

limitations by the objective medical evidence was a clear, convincing, and unchallenged reason for the ALJ to discount Plaintiff's symptom claims.

### 2. Improvement

Second, the ALJ found Plaintiff's symptom claims were "inconsistent because [Plaintiff] generally improved with physical and mental treatment." Tr. 22. A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). In her opening brief, Plaintiff generally argues that the ALJ "made this finding without offering any specific supporting evidence for this claim." ECF No. 11 at 13. However, the Court's review of the record indicates that the ALJ specifically noted that Plaintiff had surgery in March 2014 on her right ankle, and the "surgery appeared to be successful with progression to normal gait." Tr. 23, 707-710. By June 2014, Plaintiff reported she was feeling good and physical therapy was going well. Tr. 23, 713. Further, as noted by the ALJ, a 2015 electrodiagnostic examination in 2015 indicated evidence of moderate bilateral carpal tunnel syndrome affecting both wrists. Tr. 24, 755. However, Plaintiff "had initial improvement with non-surgical treatment techniques," and after carpal tunnel surgery in 2016, Plaintiff reported her status was improving and she rated her pain at a two out of ten. Tr.

24, 1337, 1343, 1346, 1349-50. Plaintiff's briefing does not address these findings. *Carmickle*, 533 F.3d at 1161 n.2 (Court may decline to address issues not identified or challenged with specificity in Plaintiff's opening brief).

Finally, the ALJ found that "[o]verall, [Plaintiff's] mental health treatment notes describe her condition as continually improving." Tr. 25. In support of this finding the ALJ cited reports from Plaintiff that she was doing well, felt stable, was "fully functional," and felt she was "in control." Tr. 25 (citing Tr. 657, 675, 678, 1051, 1056, 1069). Moreover, mental health treatment notes "describe [Plaintiff] as stable with repeatedly normal mental status evaluation findings," and treatment providers observed that Plaintiff was improving, she "appeared less sad and her affect was normal," and her "attitude improved and she was enjoying life." Tr. 25 (citing Tr. 590, 667, 676, 917-18, 1039). Plaintiff generally argues that "stable" only indicates "that her symptoms were not worsening or improving; it does not indicate an absence of symptoms." ECF No. 11 at 18. Moreover, in her reply brief, Plaintiff contends that the ALJ (1) "took isolated statements from [Plaintiff's] treatment record and misconstrued them as supporting the ALJ's findings," and (2) interpreted Dr. Lange's statements that Plaintiff was "doing well" as supporting the ALJ's conclusion, "[h]owever, Dr. Lange repeatedly opined that [Plaintiff] was not capable of maintaining employment." ECF No. 13 at 7. However, regardless of evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that clinical improvement in

Plaintiff's claimed physical and mental impairments across the longitudinal record was inconsistent with her allegations of incapacitating physical and mental limitations. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3. Conservative Treatment

Third, the ALJ noted that Plaintiff received conservative treatment for alleged fibromyalgia pain and her spine condition. Tr. 22-23. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Furthermore, unexplained, or inadequately explained, failure to seek treatment may be the basis for rejecting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). First, the ALJ noted that Plaintiff's treatment for her fibromyalgia pain was "relatively conservative," and she was advised to maintain a healthy lifestyle, regular exercise, and good sleep. Tr. 22 (citing Tr. 679, 829, 842, 935). Plaintiff argues the ALJ erred in making this finding because (1) Plaintiff's pain was also treated by medications including gabapentin, tramadol, and Percocet, and (2) "the record does not support that more aggressive treatment options exist for fibromyalgia but were deemed inappropriate for [Plaintiff]." ECF No. 11 at 15. To the extent the ALJ rejected Plaintiff's claims of disabling fibromyalgia pain

because her treatment was conservative, the Court finds this was not a clear and convincing reason supported by substantial evidence. However, this error is harmless because, as discussed herein, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

Second, the ALJ noted that Plaintiff's "treatment for her spine condition was also conservative." Tr. 22. In support of this finding, the ALJ noted that Plaintiff did not undergo spinal surgery or seek frequent emergency treatment for her back. Tr. 22. In addition, Plaintiff received low back injections that were described as "particularly helpful," and the longitudinal record indicates that her spine condition did not "appear to deteriorate over time," as confirmed by mild x-ray findings in 2016. Tr. 23 (citing Tr. 746, 780, 789). Finally, the ALJ noted that Plaintiff's infrequent emergency treatment for back pain was particularly notable because she was "minimally medicated," and this "suggests that her back pain was not as severe or disabling as she alleged." Tr. 23. Plaintiff's sole argument regarding this reasoning was that the ALJ erred by rejecting Plaintiff's symptom claims because she was "minimally medicated" and afraid to take opiates because of a history of addiction in her family. ECF No. 11 at 16 (citing Tr. 702). However, this argument misconstrues the ALJ's findings. The Court's plain reading of the decision indicates that the ALJ merely noted that Plaintiff "denied wanting to take opiates," without citing it as a specific reason to discount her symptom claims; and

the reference to Plaintiff being "minimally medicated" was only in support of the ALJ's finding that Plaintiff's lack of emergency treatment for her back pain was particularly notable in light of the minimal medication Plaintiff takes for her alleged back pain, not as a stand-alone reason to discount her symptom claims. Tr. 22-23.

For all of these reasons, the Court finds it was reasonable for the ALJ to discount Plaintiff's claims of disabling back pain based on the level of care she sought and the conservative treatment recommended by Plaintiff's treating providers. This was a clear and convincing reason to discount Plaintiff's symptom claims regarding her spine condition.

### 4. Daily Activities

Fourth, the ALJ found that Plaintiff's symptom claims were inconsistent with her activities. Tr. 25-26. A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In support of this finding, the ALJ cited Plaintiff's reports across the relevant adjudicatory period that she did yoga, used a stationary bike daily, walked daily, took care of a dog and cat, prepared meals, did household chores such as laundry and cleaning, drove, and fell off a ladder "which suggest greater functioning than she described at the hearing." Tr. 20, 26, 427-29, 821, 834, 1065, 1116, 1137, 1186. She also took care of her sister while she was in hospice, took care of her grandson, and in 2016 she reported driving to and from Seattle to visit her twin grandchildren. Tr. 20, 26, 857, 743, 998, 1190. Plaintiff argues that "[r]eliance on 'home activities' to evaluate a disability claim is often problematic because many such activities 'are not easily transferable to what may be the more grueling environment of the workplace, where it may be impossible to periodically rest or take medication.'" ECF No. 11 at 19 (citing *Fair*, 885 F.2d at 603). However, the Court finds it was reasonable for the ALJ to conclude that Plaintiff's documented activities, including taking care of other people and animals, was inconsistent with her allegations of debilitating functional limitations. *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 5. *Inability to Find Work*

Finally, the ALJ noted that Plaintiff "primarily blamed her inability to work on the way her situation or life changed after going to prison." Tr. 21. Moreover,

as noted by the ALJ, in February 2013 Plaintiff reported that she had been unable to find work since she was released from prison. The ALJ found this "suggests that she was looking for work, which is inconsistent with her simultaneous allegations that she believed she as unable to work." Tr. 25, 574. The fact that a claimant is unable to work for reasons other than the alleged impairments is a valid reason for the ALJ to discount Plaintiff's symptom claims. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *see also Bray*, 554 F.3d at 1227 (approving of ALJ's rejection of Plaintiff's symptom testimony in part because Plaintiff sought work during period of alleged disability). However, in this case, the Court's review of the record indicates that Plaintiff consistently testified that she could not work because of alleged anxiety, chronic pain, and communication difficulties. Tr. 59-62, 111. Thus, the Court finds this single notation in the record that Plaintiff "has not been able to find work" after being released from prison does not rise to the level of a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptom claims. However, any error is harmless because, as discussed in detail above, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

Plaintiff argues the ALJ erroneously considered the opinions of treating psychologist Leslie P. Schneider, Ph.D., treating physician Jan Lange, M.D.,

examining psychologist Tae-Im Moon, Ph.D., and evaluating psychologist R.A. Cline, Psy.D.  ECF No. 11 at 4-11.

### 1. Leslie P. Schneider, Ph.D.

First, Plaintiff argues "the ALJ failed to address the medical opinion of Leslie P. Schneider, Ph.D., a treating psychologist." ECF No. 11 at 4.  In particular, Plaintiff contends the ALJ failed to consider a statement in a January 2014 treatment note indicating that Dr. Schneider and Plaintiff

> revisited the possibility of vocational rehabilitation.  She really is not in a good place to do that at this time, as there are too many things unstable.  At some time in the future, DVR might be viable, but I do not think she is quite ready for it yet. DVR wants people quite stable, and able to work and attend work before they are willing to take them on.

Tr. 700.  However, as noted by Defendant, "Dr. Schneider did not specifically describe any functional limitations derived from [Plaintiff's] impairments, the ALJ need not treat this statement as an opinion." ECF No. 12 at 8-9.  The Court agrees.

An ALJ must evaluate every medical opinion received according to a list of factors set forth by the Social Security Administration.  20 C.F.R. §§ 416.927(c), 404.1527(c).  However, an ALJ is not required to provide reasons for rejecting statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (deciding that because the physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear

and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"). Here, Dr. Schneider generally noted that Plaintiff was too "unstable" to participate in vocational rehabilitation services at that time, but he did not assign any specific limitations regarding Plaintiff's ability to work. Therefore, the ALJ did not err in not considering Dr. Schneider's statement. *See Turner*, 613 F.3d at 1223.

### 2. Dr. Jan Lange

Treating provider Dr. Lange indicated in an August 2015 treatment note that Plaintiff was not capable of maintaining gainful employment, "both from an emotional and from a chronic pain perspective." Tr. 1071. Similarly, in August 2016, Dr. Lange noted that Plaintiff "is not able to maintain gainful employment both because of her mental illness and also because of her physical limitations." Tr. 864. The ALJ gave "slight weight" to Dr. Lange's "very brief opinions contained in [Plaintiff's] treatment records" for several reasons. Tr. 26.

First, as to Dr. Lange's August 2015 statement, the ALJ noted that the finding by Dr. Lange that Plaintiff was unable to maintain gainful employment is an issue reserved to the Commissioner. Tr. 26. The regulations are clear that the Commissioner is "responsible for making the determination or decision about whether you met the statutory definition of disability . . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see*

*also* §§ 404.1527(e)(3), 416.927(e) (3) ("[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner."). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996).

Here, the ALJ additionally found Dr. Lange's "very brief statement is inconsistent with examination findings at that appointment." Tr. 26. Plaintiff argues the ALJ erred in failing to consider Dr. Lange's "long treatment history" with Plaintiff, and cites evidence of Dr. Lange's findings over the course of their history that would be considered more favorable to Plaintiff, including: paracervical muscle and trigger point tenderness, allodynia, and sad affect. ECF No. 11 at 8 (citing Tr. 571-72, 658, 664, 682-84, 690). However, it is proper for an ALJ to reject a medical opinion if it is inconsistent with the provider's own treatment note. *See Tommasetti*, 533 F.3d at 1041. As noted by the ALJ, the only abnormal examination finding in the contemporaneous August 2015 treatment note was tenderness, "which is a subjective finding." Tr. 26, 1070-71. Plaintiff reported she felt stable emotionally, her affect was normal, and Dr. Lange noted that Plaintiff appeared less sad. Tr. 26, 1069-70. Based on the foregoing, and regardless of evidence in the overall record that could be considered more favorable to Plaintiff, the Court finds it was reasonable for the ALJ to discount Dr.

Lange's statement as inconsistent with her clinical findings on that same day. *See Burch*, 400 F.3d at 679. Moreover, as discussed above, the ALJ is not required to provide reasons for rejecting statements within medical records where, as here, those records do not reflect physical or mental limitations or otherwise provide information about the ability to work. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (deciding that because the physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions").

In addition, the ALJ considered Dr. Lange's August 2016 note that Plaintiff could lift about ten pounds on a regular basis, and found "there is again very little objective support for such a finding." Tr. 27, 1053. In support of this finding, the ALJ specifically notes that no orthopedic examination was performed at the August 2016 treatment visit, Dr. Langue's August 2016 treatment note did not contain "any further explanation," and "[s]uch a minimal lifting restriction is inconsistent with [Plaintiff's] persistently mild imaging findings with respect to her spine." Tr. 27 (citing Tr. 1053). Plaintiff does not challenge this finding in her opening brief. *Carmickle*, 533 F.3d 1155, 1161 n.2 (Court may decline to address issues not identified or challenged with specificity in Plaintiff's opening brief). Rather, she generally asserts the same argument discussed above, namely, that the ALJ erred in failing to consider Dr. Lange's "long treatment history" with Plaintiff.

ECF No. 11 at 8. However, as above, it is proper for an ALJ to reject a medical opinion if it is inconsistent with the provider's own treatment note. *See Tommasetti*, 533 F.3d at 1041. Moreover, an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or unsupported by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Thus, the ALJ did not err in considering Dr. Lange's August 2016 treatment note.

The Court finds the ALJ offered specific and legitimate reasons to discount the statements in Dr. Lange's August 2015 and August 2016 treatment notes.

*3. Dr. Tae-Im Moon, Ph.D.*

In October 2012, Dr. Moon examined Plaintiff and opined that she had marked limitations in her ability to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, maintain appropriate behavior in a work setting, and set realistic goals and plan independently. Tr. 636-40. The ALJ gave slight weight to Dr. Moon's findings for several reasons. As an initial matter, the ALJ correctly noted that Dr. Moon indicated she did not review any records as a part of her evaluation of Plaintiff, and "[t]he extent to which a doctor is familiar with other information in a claimant's case record is a relevant factor in deciding the weight to give to a medical opinion." Tr. 27 (citing 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6)).

1     Next, the ALJ found the marked limitations opined by Dr. Moon were

2     inconsistent with Plaintiff's "repeatedly normal mental status evaluation findings

3     throughout the record."  Tr. 28.  An ALJ may discount an opinion that is

4     conclusory, brief, and unsupported by the record as a whole, or by objective

5     medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th

6     Cir. 2004).  As noted by Defendant, the Court may decline to address this issue

7     because it was not raised with specificity in Plaintiff's opening brief.  ECF No. 12

8     at 6; *See Kim*, 154 F.3d at 1000 (the Court may not consider on appeal issues not

9     "specifically and distinctly argued" in the party's opening brief).  Moreover,

10    regardless of Plaintiff's waiver, as noted by the ALJ, the longitudinal record

11    includes consistently normal mental status examination findings, including Dr.

12    Moon's own findings of normal thought process and content, normal orientation,

13    normal perception, normal memory, normal fund of knowledge, normal

14    concentration, and normal abstract thought.  Tr. 25, 28, 640, 1123, 1127, 1130,

15    1134-35, 1138, 1143, 1146, 1150, 1154, 1160, 1164, 1172, 1179, 1236, 1249,

16    1258, 1263, 1269.  Thus, it was reasonable for the ALJ to find that the marked

17    limitations assessed by Dr. Moon were inconsistent with the clinical and objective

18    findings throughout the record.  This was a specific, legitimate, and unchallenged

19    reason for the ALJ to discount Dr. Moon's opined limitations.

20        In addition, the ALJ found "Dr. Moon's ratings are also inconsistent with

21    her recommendation for a DVR assessment and Job skill training.  Such a

recommendation is more consistent with the ability to work." Tr. 28. Internal inconsistencies within a physician's report constitute relevant evidence when weighing medical opinions. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Plaintiff notes that Dr. Moon also recommended a medication assessment and counseling, and contends that "the referral to DVR was only for an assessment, it is not clear whether [Plaintiff] would qualify for services, nor did Dr. Moon affirmatively state [that Plaintiff] would be a good candidate for DVR – rather, she only wanted an assessment to be done." ECF No. 11 at 10. However, a plain reading of Dr. Moon's opinion reveals that she also recommended that Plaintiff receive job skills training, and checked the "yes" box in answer to the question "would vocational training or services minimize or eliminate barriers to employment?" Tr. 639. Thus, it was reasonable for the ALJ to find Dr. Moon's recommendation for job skills training and vocational assessment was inconsistent with the marked limitations she assessed on Plaintiff's ability to perform basic work activities. This was a specific and legitimate reason to discredit the marked limitations opined by Dr. Moon.

Finally, the ALJ found the marked limitations assessed by Dr. Moon "are inconsistent with [Plaintiff's] ability to perform public errands, even when confronted by triggers, [and] care for her dying sister and grandchildren." An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Plaintiff argues the ALJ "failed to reconcile the differences between a full-time job and the occasional activities cited by the ALJ." ECF No. 11 at 9-10. The Court agrees. When explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Here, it is unclear how the precise marked limitations on basic work activities opined by Dr. Moon are inconsistent with Plaintiff's ability to run errands and care for family members. However, this error is harmless because, as discussed herein, the ALJ's ultimate rejection of Dr. Moon's opinion was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63..

Based on the foregoing, the Court finds the ALJ properly discounted the marked limitations opined by Dr. Moon.

### 4. R.A. Cline, Psy.D.

In August 2015 and June 2017, Dr. Cline examined Plaintiff and opined that she had marked limitations in her ability to communicate and perform effectively in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 856-60, 1353-58. The ALJ gave little weight to Dr. Moon's findings for several reasons. Tr. 28. First, the ALJ found the "marked limitations were based primarily on [Plaintiff's] subjective reports. In fact, the later evaluation reports specify that Dr. Cline relied

on [Plaintiff's] self-reports and 'information made available as noted above.' The only information reviewed were the prior DSHS evaluation." Tr. 28, 856, 1353. Plaintiff briefly argues this finding is "contrary to Ninth Circuit holdings," and cites a single case that found "in the context of [that] case," that the doctor's "partial reliance on" Plaintiff's symptoms was not a reason to reject his opinion. ECF No. 11 at 10-11 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)). However, it has been well-settled in the Ninth Circuit that the ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted. *See Tommasetti*, 533 F.3d at 1041. It was reasonable for the ALJ to discount Dr. Cline's opinion because Dr. Cline, by his own admission, based his assessment entirely on Plaintiff's self-report and Dr. Cline's own previous opinions. Tr. 856, 1353.

In further support of this reasoning, the ALJ found that "other than relying on Plaintiff's self-report, the longitudinal record provides no support for the worsening of [Plaintiff's] condition." Tr. 28. As noted by the ALJ, the marked ratings are inconsistent with the mostly normal mental status evaluation findings during both evaluations, including normal thought process, normal orientation, normal perception, normal memory, normal fund of knowledge, normal concentration, normal abstract thought, and normal insight and judgment. Tr. 28, 860-61, 1357-58. Plaintiff fails to "specifically and distinctly" identify or challenge these reasons given by the ALJ for discounting Dr. Cline's opinion. *See*

*Kim*, 154 F.3d at 1000. Regardless, the Court finds it was proper for the ALJ to reject this medical opinion because it is inconsistent with the provider's own clinical findings. *See Tommasetti*, 533 F.3d at 1041. Moreover, the consistency of Dr. Cline's medical opinion with the record as a whole was a relevant factor in the ALJ's evaluation of her medical opinion. *Orn*, 495 F.3d at 631. These were specific, legitimate, and largely unchallenged reasons for the ALJ to reject the marked limitations opined by Dr. Cline.

Based on the foregoing, the Court finds no error in the ALJ's consideration of the medical opinion evidence.

## C. Step Five

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to prove that, based on the claimant's residual functional capacity, age, education, and past work experience, he or she can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. §§ 416.920(g), 416.960(c). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The vocational expert may testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. *Tackett*, 180 F.3d at 1101. If the claimant can perform jobs which exist in significant numbers either in the region where the

claimant lives or in the national economy, the claimant is not disabled. 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(b). The burden of establishing that there exists other work in "significant numbers" lies with the Commissioner. *Tackett*, 180 F.3d at 1099.

Here, the vocational expert testified that a hypothetical individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the requirements of representative jobs such as small products assembler (254,000 jobs in the national economy), inspector and hand packager (143,000 jobs in the national economy), and parts cleaner (72,000 jobs in the national economy). Tr. 29, 118. As an initial matter, Defendant concedes that Plaintiff "correctly points out in her brief that her manipulative limitations actually precluded small parts assembler." ECF No. 12 at 17. However, as further noted by Defendant, "the remaining jobs [of inspector and hand packager, and parts cleaner] , still amounted to 215,000 jobs nationally, well exceeding the 25,000 jobs the Ninth Circuit held to be a 'close call' but still significant." ECF No. 12 at 17 (citing *Gutierrez*, 740 F.3d at 529 (finding 25,000 jobs in the national economy was a significant number)). Thus, the Court finds no harmful error in the ALJ's overall reliance on the vocational expert's testimony. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

Plaintiff also briefly argues that the vocational expert did not provide the correct number of jobs for the occupations identified. ECF No. 11 at 20. A vocational expert's "recognized expertise provides the necessary foundation for his or her testimony." *Bayliss*, 427 F.3d at 1217-18. Plaintiff cites "Job Browser Pro" to challenge the job data contained in the vocational expert's testimony. ECF No. 11 at 20. However, as noted by Defendant, "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." ECF No. 11 at 20 (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017)). The Court finds no such challenge in the hearing transcript. Tr. 120-23. Thus, this line of argument was waived.

Furthermore, courts considering similar arguments have found that lay assessment of raw data by looking at Job Browser Pro does not rebut a vocational expert's opinion. E.g., *Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (concluding the ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a source listed in 20 C.F.R. §§ 404.1566(d), 416.966(d), and the data derived from it served only to show that evidence can be interpreted in different ways); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay

assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.") (internal footnote omitted); *Merryflorian v. Astrue*, 2013 WL 4783069, at *5 (S.D. Cal. Sept. 6, 2013) (noting cases that "uniformly rejected" arguments that Job Browser Pro data undermined vocational experts' testimony). Thus, the ALJ properly relied on the vocational expert's testimony. The Court finds no error at step five.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, properly considered the medical opinion evidence, and did not err at step five. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** March 18, 2020.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge